**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

WYATT T. HANDY, JR.,

     Plaintiff - Appellant,

v.

CITY OF SHERIDAN; DET. KRISTINE
BRYANT, in her individual and official
capacity; OFF. MIKE MONTOYA, in his
individual and official capacity,

     Defendants - Appellees.

No. 15-1048
(D.C. No. 1:12-CV-01015-WYD-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **PHILLIPS**, Circuit Judges.

_____

In 2010, Wyatt T. Handy, Jr. was prosecuted by the State of Colorado for

attempted murder, felony menacing, and misdemeanor harassment for allegedly

pursuing his ex-wife's vehicle at a high rate of speed and hitting it twice from

behind. He was acquitted of attempted murder but convicted on the lesser charges.

He was later arrested again, for sending letters to his ex-wife in violation of a

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

protective order, although that charge was eventually dismissed. He then brought this action asserting claims under federal and state law against certain police officers and the City of Sheridan, which employed them. He now appeals from a number of rulings culminating in the grant of summary judgment for defendants, as well as from the denial of his motion for post-judgment relief. For reasons explained below, we affirm.

## I. BACKGROUND

On January 19, 2010, Mr. Handy's ex-wife, Lacy Jo Smith, came to the City of Sheridan Police Department with a companion to report a traffic incident involving serious criminal conduct by Mr. Handy. They reported to defendants Detective Kristine Bryant and Officer Michael Montoya that Mr. Handy's car had followed them at high speed through the city and twice hit their vehicle from behind. They said one of the collisions occurred when they were stopped at a red light and resulted in Ms. Smith's vehicle being pushed into the path of traffic. An inspection revealed damage to the rear area of her vehicle, and she specifically identified Mr. Handy as the perpetrator from a photo dossier. Detective Bryant prepared an affidavit of probable cause. A few days later, Detective Bryant learned of a potential eyewitness who reported seeing a car (late 1970s Cadillac) similar to Mr. Handy's hit a silver vehicle (the color of Ms. Smith's vehicle) several times. On February 1, 2010, Ms. Smith contacted Detective Bryant to report that the collisions with Mr. Handy's car had terminated her pregnancy. A warrant was issued for Mr. Handy's arrest on

2

charges that included two counts of attempted second-degree murder and other charges. He was arrested shortly thereafter.

At the ensuing preliminary hearing, Detective Bryant testified about the statements from Ms. Smith and her companion and the damage observed to the rear of Ms. Smith's vehicle. The judge found probable cause existed for the charges against Mr. Handy. Later, the district attorney moved to upgrade the attempted second-degree murder charges to attempted first-degree (extreme indifference) murder. Detective Bryant and Officer Montoya testified at the associated hearing. The judge found probable cause for the upgraded charges.

Trial was held in August 2011. Mr. Handy was acquitted on the attempted murder charges but convicted of felony menacing and misdemeanor harassment. His time served in pretrial custody exceeded his jail sentence for the convictions. In the meantime, however, Detective Bryant had been contacted by a district attorney regarding allegations that Mr. Handy, who was in pretrial custody in Denver, had sent threatening letters to Ms. Smith, who was also incarcerated in Denver. Because of Detective Bryant's connection to Mr. Handy's prosecution, the district attorney asked her to investigate the allegations. Upon learning Mr. Handy had sent letters to Ms. Smith contrary to an outstanding protective order, Detective Bryant submitted another probable-cause affidavit, resulting in issuance of a warrant for Mr. Handy's arrest for violating the protective order. But she made a mistake in stating that the violation occurred in the City of Sheridan (rather than Denver), apparently by failing

3

to alter a section of the affidavit template referring to the former. The protective order violation charge was eventually dismissed.

## II. DISTRICT COURT PROCEEDINGS

Because the bulk of Mr. Handy's objections on appeal are procedural, we begin with the relevant procedural history.

Some five months after Mr. Handy filed his pro se complaint, the district court issued a scheduling order setting forth deadlines for expert disclosure (January 25, 2013), completion of discovery (March 25, 2013), and filing of dispositive motions (April 25, 2013). In November 2012, Mr. Handy moved for appointment of counsel. This motion was denied by the magistrate judge without Mr. Handy seeking further review of the matter by the district court.

In December 2012, Mr. Handy filed a motion to compel adequate responses to discovery requests previously served on defendants. But he failed to appear at the February 6, 2013, hearing on the matter and the magistrate judge denied the motion without prejudice. In the meantime, the deadline for expert disclosures passed with no disclosure from Mr. Handy. On February 22, 2013, two attorneys entered their appearance on Mr. Handy's behalf. They did not, however, reassert his motion to compel or take any other action with respect to discovery before the applicable deadline passed a month later.

In May 2013, all three defendants moved for summary judgment on the claims asserted against them. Counsel for Mr. Handy filed a response to each of the motions on June 3, 2013, and then moved to withdraw a week later at Mr. Handy's request.

4

Defendants filed their reply to the response on June 17, 2013. With summary judgment fully at issue, the district court granted counsel's motion to withdraw on July 11, 2013.

Mr. Handy thereafter filed a series of motions effectively seeking to relitigate the case. He moved for leave to file new responses to defendants' summary judgment motions, sought to amend the scheduling order and reopen discovery, and filed a second motion to compel discovery.[1] Defendants opposed these efforts, arguing they were untimely, in derogation of the principle that a party is bound by his counsel's litigation decisions,[2] and unfairly prejudicial. On January 14, 2014, the district court denied Mr. Handy's motion for leave to file new responses on summary judgment, which obviated the need for action by the magistrate judge on the other motions until that potentially dispositive matter was resolved. Two weeks later, Mr. Handy filed a motion for reconsideration of the order denying his request to

---

[1] Mr. Handy also renewed his request for appointment of counsel. The magistrate judge denied the request in an order for which Mr. Handy, again, did not seek district court review.

[2] Parties are "held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993). Mr. Handy insists our precedent is to the contrary. But the cases he cites in this regard, such as *Smith v. United States*, 834 F.2d 166, 171 (10th Cir. 1987), all deal with the unique situation of sanctions, where it can be appropriate to attribute fault between counsel and client in order to determine where an appropriate penalty should fall. *See Davis v. Miller*, 571 F.3d 1058, 1062 (10th Cir. 2009). This case has nothing to do with sanctions, but merely the practical consequences of litigation acts, where client accountability for the actions of counsel is the rule, *see Sec. Nat'l Bank of Enid v. John Deere Co.*, 927 F.2d 519, 520-21 (10th Cir. 1991).

re-brief summary judgment, along with an affidavit to support the summary judgment response filed by his attorneys.

On February 17, 2014, the district court granted summary judgment for defendants, denying Mr. Handy's pending motion for reconsideration at the same time. The next day, the magistrate judge denied Mr. Handy's motions to reopen and compel discovery as moot. Final judgment was entered for defendants on February 24, 2014. Mr. Handy moved for reconsideration under Fed. R. Civ. P. 59(e) and 60(b) three weeks later, arguing among other things that the district court erred in granting summary judgment while his motions to reopen and compel discovery and to amend the scheduling order were pending.[3] He also filed what purported to be responses to defendants' original summary judgment motions. The district court denied reconsideration, and this appeal timely followed.

### III. MATTERS NOT PROPERLY BEFORE US ON APPEAL

At the outset, we clarify the limited scope of this appeal by identifying two general matters raised by Mr. Handy that are not properly before us. First, he challenges the magistrate judge's denial of his motions for appointment of counsel. Magistrate judges have authority to issue final decisions on such nondispositional matters under 28 U.S.C. § 636(b)(1)(A), subject to review by the district court. But Mr. Handy did not object to the magistrate judge's decisions and, as a result, they

---

[3] We note that Mr. Handy had not filed a motion under Rule 56(d), with the requisite supporting affidavit, requesting postponement of summary judgment on the basis of a reasonable and substantiated need for further discovery.

6

were never considered and upheld (or reversed) in a district court order ultimately reviewable by this court under 28 U.S.C. § 1291. We are thus left with only the magistrate judge's orders, and we have repeatedly recognized that we lack jurisdiction to directly review orders issued by a magistrate judge under § 636(b)(1)(A). *See S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1269 (10th Cir. 2010) (following *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997)); *Niehaus v. Kan. Bar Ass'n*, 793 F.2d 1159, 1164-65 (10th Cir. 1986), *superseded by statute on other grounds as stated in DeVargas v. Mason & Hangar-Silas Mason Co.*, 911 F.2d 1377, 1383-84 (10th Cir. 1990).

Mr. Handy argues that his failure to object should be excused because he is pro se and was not warned of the adverse appellate consequences of the omission. Mr. Handy confuses his situation with that of a litigant who has failed to object to a magistrate judge *recommendation*, involving a dispositive matter under 28 U.S.C. § 636(b)(1)(B), that was subsequently adopted in a district court order. In the latter context, this court has jurisdiction to review the district court's order, but applies a discretionary waiver rule if certain conditions are met—one of which is that a pro se litigant must have been informed about the waiver consequences of failing to object within the specified time. *See, e.g.*, *Jones v. Salt Lake Cty.*, 503 F.3d 1147, 1152 (10th Cir. 2007). This distinction between the jurisdictional bar to direct review of magistrate judge orders issued under § 636(b)(1)(A) and the waiver rule limiting review of district court orders based on unchallenged recommendations issued under

7

§ 636(b)(1)(B) is critical, as we explained in *Wishneski v. Andrade*, 572 F. App'x 563 (10th Cir. 2014), in response to an argument identical to Mr. Handy's:

> Mr. Wishneski confuses our waiver rule for [unchallenged] magistrate judge recommendations reviewed by the district court under § 636(b)(1)(B)—a *nonjurisdictional* rule for which equitable conditions and exceptions are appropriate—with the prohibition on our direct review of magistrate judge decisions issued under § 636(b)(1)(A) that a district court has not considered—a jurisdictional limitation for which equitable conditions and exceptions are inapposite. *See generally Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) ("Courts have 'no authority to create equitable exceptions to jurisdictional requirements.'" (quoting *Bowles v. Russell*, 551 U.S. 205, 214, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007)).

*Id.* at 572 (footnote omitted).  We lack jurisdiction to review the magistrate judge's denial of Mr. Handy's motions for appointment of counsel and, accordingly, must dismiss that aspect of his appeal.

Our second point here does concern a waiver principle.  The claims on which the district court granted summary judgment against Mr. Handy included a municipal-liability claim against the City of Sheridan and a number of state-law claims against the defendant police officers.  But, as the government notes in its answer brief, Mr. Handy does not address these claims in his opening brief.  As a general matter, "[a]rguments not clearly made in a party's opening brief are deemed waived." *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012).  We see no reason not to apply that rule here.  Mr. Handy insists that the liberal construction to which his pro se filings are entitled should override this waiver rule.  He is mistaken.  Pro se litigants are required to follow the same procedures as other litigants, *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), and liberal

8

construction of their filings does not extend to curing adversarial omissions by supplying arguments for them that they have failed to make, *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1173 (10th Cir. 2013).  Accordingly, notwithstanding the principle of liberal construction, this court "has not hesitated to apply" against pro se litigants our general waiver rule barring review of arguments omitted from opening briefs, *Toevs*, 685 F.3d at 911, and we do so in this case.

## IV.  ANALYSIS OF ISSUES ON APPEAL

### A.  Motions to Reopen and Compel Discovery and Amend the Scheduling Order

Mr. Handy frames this issue in terms of the district court's failure to defer summary judgment to permit him to resume and pursue discovery.  But in the course of arguing that point, he also objects that his discovery motions were denied without use of the multi-factor analysis this court has applied when considering the issue of reopening discovery.  *See Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).  *Smith*'s guidance with respect to the assessment of reopening motions on the merits is inapposite here.  Mr. Handy's discovery motions were not denied on the merits but, rather, summarily denied because they had become moot with the disposition of the case on summary judgment.  *See generally Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) (noting mootness precludes any merits disposition).  This, of course, just points up the fact that the real issue here concerns Mr. Handy's overarching

9

objection to the grant of summary judgment while his discovery motions remained pending.[4]

"There is no requirement in Rule 56 . . . that summary judgment not be entered until discovery is complete." *Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006) (brackets and internal quotation marks omitted). To forestall a ruling on summary judgment due to a need for discovery, a party must move for postponement under Rule 56(d) and "file an affidavit that explains why facts precluding summary judgment cannot be presented." *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (brackets and internal quotation marks omitted). If a party fails to comply with this directive, "he has waived the argument that the grant of summary judgment should be set aside for lack of sufficient discovery." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1124 (10th Cir. 2008). Mr. Handy did not file a motion and affidavit to defer summary judgment under Rule 56(d) and, as we have already noted, his pro se status did not exempt him from compliance with the procedural rules applicable to all litigants, *see Garrett*, 425 F.3d at 840.

---

[4] Although noting that the motions were disposed of on mootness grounds pretermitting a merits ruling, defendants argue that denial on the merits would have been a proper exercise of the court's discretion in any event. We decline defendants' invitation to consider this alternative point in the first instance. *See generally Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003) (noting "obvious complications" presented when appellate court endeavors "to fashion its own rationale for a decision entrusted in the first instance to the discretion of the district court").

Mr. Handy argues that his motions to reopen and compel discovery should be liberally construed as the equivalent of a Rule 56(d) motion. There are a number of problems with this argument. First, a proper Rule 56(d) motion puts the district court on notice not only that there may be uncompleted discovery—which, in itself, would have no effect on summary judgment proceedings—but also that the movant contends the uncompleted discovery is material to the issues raised on summary judgment and warrants deferral of any disposition. Lacking such a motion, the district court could hardly be faulted for bringing the fully briefed summary judgment proceedings to a conclusion. Further, construing Mr. Handy's discovery motions as Rule 56(d) motions does not supply the requisite *affidavit*. That is a separate requirement of the rule that "ensure[s] that the . . . party is invoking the protections of Rule 56[(d)] in good faith." *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (holding unverified assertions of counsel in motion do not satisfy affidavit requirement and result in waiver).

But even overlooking such concerns and accepting Mr. Handy's discovery motions as facially complying with Rule 56(d), they do not satisfy the substantive demands of the rule. To do that, they must "identify[] (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (brackets and internal quotation marks omitted). And "mere assertion[s] that discovery is

11

incomplete or that specific facts necessary to oppose summary judgment are unavailable" do not suffice. *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986). Mr. Handy's motions were not directed at forestalling summary judgment under Rule 56(d), and they never addressed the overarching issue under that rule: how would the facts anticipated from discovery meet the grounds advanced by the defendants for summary judgment? Indeed, only passing reference was made to the fact that summary judgment was pending at all.

In the motions Mr. Handy complained that defendants' response to discovery had been incomplete and that his own attorneys had done nothing to rectify the problem. Neither of those complaints shows that further discovery would enable him to rebut defenses raised by defendants on summary judgment. He also referred generally to the lack of responses to discovery regarding his ex-wife's arrest record, the defendant police officers' personnel files, administrative records regarding the officers' training, a transcript of their trial testimony, and his own arrest file, but he did not specify what facts these arguable fishing expeditions were expected to uncover that would have effectively rebutted the grounds asserted by defendants for summary judgment. *See generally Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1208 (10th Cir. 2015) ("Rule 56(d) *is not a license for a fishing expedition*." (brackets and internal quotation marks omitted)).[5] His belated attempts to do so in

_____

[5] He did specifically note Detective Bryant's response to an interrogatory admitting that she had been the subject of two complaints, one involving an untimely investigation of a child sexual assault that had been sustained and the other involving

(continued)

12

his appellate briefing cannot provide a basis for attributing error to the district court with respect to its treatment of the deficient materials filed with that court.

For all of the above reasons, Mr. Handy has failed to demonstrate any error in the treatment of his discovery motions. He has very little to say regarding the associated request to amend the scheduling order. In his opening brief he merely recites the applicable good-cause standard. In his reply brief he appears to associate the scheduling-order issue with the designation of expert witnesses, mentioning in passing an expert he wished to designate. He did nothing more in the motion filed in the district court. Given the lack of any explanation as to what the expert's opinions would be, let alone whether and how they would materially affect the issues raised in the pending summary judgment motions, what we have said above with respect to the discovery motions is equally applicable here. It was not error for the district court to decide this case on summary judgment notwithstanding the outstanding request to amend the scheduling order.

## B. Denial of Leave to File Additional Pro Se Responses on Summary Judgment

After summary judgment was at issue and fully briefed—with submission of separate motions from each of the three defendants, responses from Mr. Handy's

---

a charge of destruction of evidence and perjury that was still under review. *See* R. at 1061, 1073. He did not, however, explain how this admission would have impacted the issues on summary judgment involving Detective Bryant's conduct with respect to the existence and determination of probable cause under the circumstances of this case. It was not the duty of the district court to develop an argument in this regard that Mr. Handy had not made (in support of a Rule 56(d) motion he had not actually filed). *See Walters*, 703 F.3d at 1173.

counsel to each of the motions, and replies to these responses from all three defendants—Mr. Handy filed a motion asking the district court to strike his counsel's responses and grant him leave to file his own new responses in their place (to which, of course, defendants would need to prepare a set of new replies).[6] In short, he sought an after-the-fact pro se do-over of the summary judgment proceedings, because in hindsight he felt that he could do a better job than the attorneys he had retained. The district court summarily declined to allow this delaying and wasteful procedural redundancy.

A cornerstone of Mr. Handy's argument is that he should not have been bound by what he considered inadequate work by his counsel. But, as we noted earlier, it is the general rule with respect to civil litigation that litigants are "accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993). Particularly apt here—where the procedure proposed by Mr. Handy would have necessitated a new round of briefing involving the motions of three defendants—is our recognition that courts should not "visit the

---

[6] He also filed an affidavit in opposition to the summary judgment motions. We discuss this belated filing below. Here it suffices to note that the proper denial of Mr. Handy's motion to re-brief summary judgment forestalls any argument that his gross delay in filing the affidavit should be excused in light of an entitlement to reopen summary judgment proceedings.

sins of a plaintiff's lawyer upon the defendant." *Nelson v. Boeing Co.*, 446 F.3d 1118, 1121 (10th Cir. 2006) (brackets and internal quotation marks omitted).[7]

Rulings with respect to supplemental briefing and amendment of motions are reviewed for an abuse of discretion. *See, e.g.*, *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1194 n.5 (10th Cir. 2008); *GWN Petroleum Corp. v. OK-Tex Oil & Gas, Inc.*, 998 F.2d 853, 858 (10th Cir. 1993). "A court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (internal quotation marks omitted). Under the circumstances, we cannot say the district court abused its discretion when it refused to order another round of briefing on three summary judgment motions—involving some twenty-five claims—that were fully at issue and awaiting disposition.

Mr. Handy moved for reconsideration of the district court's order refusing to permit further responses to summary judgment, and with that motion he submitted a lengthy affidavit in opposition to summary judgment. Nothing in the motion for reconsideration, which the district court denied when it granted summary judgment shortly thereafter, causes us to question the correctness of the original ruling. But Mr. Handy now separately objects that the affidavit he submitted with the motion

---

[7] We note that Mr. Handy recently submitted to this court an order issued by the district court censuring one of his attorneys for improprieties regarding setting and collecting his fee for this and another case. That order is not material to the issues before us.

should have been treated as part of the evidentiary record on summary judgment—notwithstanding the district court's (proper) refusal to accept new summary judgment responses.[8] In this regard he argues his affidavit (1) was a supplementation of prior summary judgment filings that (2) was timely under Fed. R. Civ. P. 6, which permits the filing of opposing affidavits shortly before the hearing on a motion.[9] He did not, however, advance this argument to the district court when he submitted the affidavit (or even later, in his post-judgment motion under Rules 59 and 60). He also does not argue (nor would we find) that the district court's failure to anticipate this unstated ground for accepting the affidavits rose to the level of plain error. Under the circumstances, we do not consider the matter as a basis for disturbing the judgment

---

[8] He also objects that the district court erred in granting summary judgment without considering the pro se responses he eventually filed in opposition. But such responses were precisely what the district court had already ruled would not be considered. And, in any event, they were not filed until *after the entry of summary judgment*. Obviously, the district court did not err in failing to consider these responses when it granted defendants' motions for summary judgment.

[9] He cites to *Lujan v. National Wildlife Federation*, 497 U.S. 871, 895 (1990), quoting provisions in then-Rule 56(c) and Rule 6(d) permitting the filing of opposing affidavits up until a day before the hearing. There is no longer a provision in Rule 56 addressing the time for filing opposing affidavits, while Rule 6(c)(2) directs that they be filed seven days before the hearing. Mr. Handy's affidavit would appear to meet this deadline. Defendants argue the affidavit was nevertheless late under a local court rule stating that "a response" to a summary judgment motion "shall be filed no later than 21 days of the date of service of the motion," D. Colo. Civ. R. 56.1(a), but they cite no authority for their assumption that the deadline for a response bars later submission of supporting affidavits, as they become available, up to the time the matter is actually heard. We need not delve into these details of summary judgment procedure in light of the distinct basis for our disposition explained above.

16

of the district court.  *See Martinez v. Angel Expl., LLC*, 798 F.3d 968, 974 (10th Cir. 2015); *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 718 n.9 (10th Cir. 2014).

## C.  Summary Judgment for Officers Bryant and Montoya

Given Mr. Handy's waiver regarding the state-law claims asserted against the defendant officers discussed earlier, we are concerned here only with the federal claims under § 1983.  We review the grant of summary judgment on these claims de novo, using the same standard as the district court under Fed. R. Civ. P. 56(a). *Certain Underwriters at Lloyd's London v. Garmin Int'l, Inc.*, 781 F.3d 1226, 1229-30 (10th Cir. 2015).  That is, we will affirm the district court's determination if "'there is no genuine dispute as to any material fact and [defendants are] entitled to judgment as a matter of law.'"  *Id.* 1230 (quoting Rule 56(a)).

### 1.  Fourth Amendment Claim for Failure to Adequately Investigate Charges Arising out of January 2010 Traffic Incident

Mr. Handy claimed that his Fourth and Fourteenth Amendment rights were violated by defendants Bryant and Montoya for their alleged failure to adequately investigate the attempted-murder charges brought against him for the 2010 traffic incident.  With respect to the Fourth Amendment claim, which we address first, he also asserted that the probable-cause affidavit supporting the warrant for his arrest was deficient in terms of both evidence it omitted and inaccurate facts it included. The district court granted summary judgment for defendants because:  (1) they were entitled to qualified immunity on the inadequate-investigation allegation because no such duty to investigate was clearly established in the law and, alternatively, they did

17

not violate their duty in this respect; and (2) the affidavit for the warrant did not materially misstate facts, and any omissions were immaterial in that their inclusion would not have vitiated probable cause. We agree with this disposition.

"Regarding the requisite proof of clearly established law, a plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (brackets and internal quotation marks omitted). While "the plaintiff need not locate a *perfectly* on-point case" and "officials can still be on notice that their conduct violates established law even in novel factual circumstances," "existing precedent must have placed the statutory or constitutional question beyond debate." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (internal quotation marks omitted). To support his claims, Mr. Handy points to case law such as *Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995), which "requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Id.* at 1476-75. *See also Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007) (en banc) (quoting *Romero* formulation of duty to investigate as clearly established law). But as the quotation reflects, this case law involves the particular circumstance of a warrantless arrest, where a law enforcement officer acts upon her own evaluation of the developing facts, without the support of a judicial officer's prior determination of

18

probable cause based on evidence mustered for that purpose.[10]  It is not at all clear

that this duty to investigate extends to the situation where a judge makes the

probable-cause determination to issue a warrant.  Some time ago the Supreme Court

explained the division of constitutional functions among law enforcement,

magistrates, and judges when an arrest is made pursuant to a warrant, and its

discussion lends little support to the notion of law enforcement's duty to investigate

for additional, potentially exculpatory information when existing evidence is found

by a judicial officer to establish probable cause:

> A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers—all of whom may be potential defendants in a § 1983 action—is entirely consistent with "due process of law."  Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.  Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.  The ultimate determination of such claims of innocence is placed in the hand of the judge and the jury.

*Baker v. McCollan*, 443 U.S. 137, 145-46 (1979).  Thus, it appears patent that it was

not "beyond debate" whether controlling precedent at the time of the events

underlying this action contemplated a duty to investigate of the type at issue here in

the warrant context.

---

[10] *See also, e.g.*, *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1432 (10th Cir. 1984), *vacated on other grounds*, 474 U.S. 805 (1985).

Even if the duty to investigate that we have recognized in warrantless-arrest cases were to apply here, we would agree with the district court that such a duty was not violated. As noted above, our cases indicate that law enforcement officers must interview readily available witnesses and investigate basic evidence to determine whether a crime has been committed and whether the suspect committed the crime. Defendants did that here. They interviewed the occupants of Ms. Smith's vehicle, which was allegedly chased and hit by Mr. Handy's car, inspected Ms. Smith's vehicle for damage indicating a rear-end collision, and confirmed that it was Mr. Handy driving the car. At Ms. Smith's suggestion they examined her cell phone, which during her time at the police station had received a number of aggressive, threatening text messages from Mr. Handy's phone number, including one referring to her "snitch[ing]" on him. R. at 352. In a follow-up call, Ms. Smith stated that when Mr. Handy's vehicle pushed hers into the intersection, she thought it was a deliberate act and she felt he was trying to kill her. This information was enough to support probable cause for arresting Mr. Handy on the attempted murder and associated charges. And "once probable cause is established, an officer is not required to continue to investigate for exculpatory evidence before arresting a suspect." *Cortez*, 478 F.3d at 1121 n.18. The officers did attempt to contact Mr. Handy and left a voicemail, but he did not respond.

Mr. Handy insists the officers should have done additional investigation, such as taking measurements and searching for physical evidence at the intersection where

the primary collision occurred,[11] or checking police and business surveillance cameras in the area (though he does not identify any exculpatory evidence that would have been obtained from doing so). This is precisely the continued "investigat[ion] for exculpatory evidence" that we have said is not required before an arrest already supported by evidence demonstrating probable cause. *Id.* The steps suggested by Mr. Handy might be undertaken by the State—or defense—in preparing for trial, when "[t]he *ultimate determination* of" of guilt or innocence "is placed in the hands of the judge and the jury," *Baker*, 443 U.S. at 146 (emphasis added). But it reflects a basic misunderstanding of the "division of functions between law enforcement, committing magistrates, and judicial officer" explained in *Baker* to suggest that the preliminary probable-cause determination is to be evaluated by evidentiary expectations appropriate for trial. *Id.* at 145.

Mr. Handy's contentions regarding the content of the probable-cause affidavit, both on appeal and in the district court, have focused on one alleged misstatement and one alleged omission. As for the former, he objects to its use of the word "rammed" in reference to the alleged collisions with his car. But, as Detective Bryant's uncontroverted affidavit states, that was the word used by Ms. Smith when

---

[11] Detective Bryant explained in an affidavit that she "did not believe it was necessary for any officer to investigate the intersection . . . because I did not think there would be any thing to find there, given the amount of traffic that passes through there and the appearance of [Ms. Smith's] vehicle. Measurements of the accident scene could not have been taken, as the vehicles had already been removed by the time the incident was reported." R. at 339; *see also* R. 369-70 (Officer Montoya's affidavit to same effect).

21

she spoke with Detective Bryant. *See* R. at 338. Officer Montoya's police report reflects Ms. Smith's use of "rammed" as well. *Id.* at 475. When Officer Montoya later took her statement, she referred to the critical collision at the intersection in slightly different terms, saying Mr. Handy "hit the back of my vehicle again full forced" [sic] sufficient "to push my vehicle into [the cross-street]." R. at 479. Misrepresentations in an affidavit for an arrest warrant violate the Fourth Amendment if (1) they reflect intentional falsity or reckless disregard for the truth and (2) their correction would vitiate probable cause. *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015). The minor difference in wording here does not satisfy either of these conditions, let alone both.

The Fourth Amendment analysis of omissions is the same. *See id.* In this regard, Mr. Handy complains that the probable-cause affidavit did not state that the damage to Ms. Smith's vehicle was slight or moderate rather than severe. But while that might reduce the estimated force of the initial impact with Mr. Handy's car, the material point for the attempted murder charges was that Ms. Smith's vehicle was ultimately pushed into the path of traffic, and that point—established by consistent statements from the two witnesses involved—is not refuted by evidence suggesting that the initial impact did only slight or moderate damage to the vehicle. In short, the alleged omission did not undermine the probable cause otherwise supported by the affidavit. Consequently, there was no Fourth Amendment violation.

22

## 2. Fourteenth Amendment Claim for Failure to Adequately Investigate Charges Arising out of January 2010 Traffic Incident

Mr. Handy's complaint also included a Fourteenth Amendment claim for failure to investigate, but its summary invocation of this alternative constitutional theory did not indicate how it differed in focus or substance from the Fourth Amendment claim. Nor did his counseled responses to the officers' motions for summary judgment distinguish the bases for the two claims. Rather, the conduct we have already considered in connection with the Fourth Amendment was presented under a heading referring jointly to the Fourth and Fourteenth Amendment. To the extent any of the conduct is properly scrutinized under Fourteenth Amendment standards, we agree with the district court that the latter were not violated. To be actionable, a substantive due process claim requires the "behavior of the governmental officer [to be] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[12] *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). It should be clear from what we have already said about defendants' behavior that they did not violate this stringent standard.

In his opening brief on appeal, Mr. Handy argues the Fourteenth Amendment claim was intended to target not only the officers' pre-arrest investigation but their post-arrest investigation as well—without actually identifying what aspects of the latter violated the Fourteenth Amendment. He does argue a few minor points in the

---

[12] Mr. Handy has not argued a violation of his procedural rights under the Fourteenth Amendment.

23

latter regard in his reply brief, but as previously noted we generally do not consider matters presented only for the first time in a reply brief. *See Toevs*, 685 F.3d at 911. Moreover, the record sources he cites for these matters are his belatedly submitted affidavit and pro se summary judgment responses (and the post-judgment motion for reconsideration he filed relying on these sources) which, we have already held, the district court properly excluded. These are, therefore, beyond our purview on this appeal and provide no basis for disturbing the decision of the district court.[13]

### 3. Malicious Prosecution Claims for January 2010 Traffic Incident

Mr. Handy asserted three malicious-prosecution claims (claims three through five in the complaint) against defendants Bryant and Montoya for their role in the initiation of his criminal prosecution on charges arising out of the traffic incident. He claimed that they violated his Fourth Amendment rights by perjuring themselves; violated his Fourteenth Amendment rights by fabricating evidence; and engaged in a conspiracy to violate these rights. The district court noted that he had testified in his deposition that these claims were all based on the officers' preliminary-hearing testimony, and concluded that the claims were consequently barred by the absolute immunity afforded court testimony. *See PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182,

---

[13] While not necessary to our disposition, it is worth noting that the matters cited by Mr. Handy—lack of damage to the front of his vehicle, a potential eyewitness whose account differed in some details from that of Ms. Smith (but still broadly corroborated her account of a high speed chase and collisions), and the lack of accident reconstruction—came up at the preliminary hearing, yet the state district judge still confirmed the existence of probable cause to prosecute Mr. Handy on the attempted murder charges.

24

1196 (10th Cir. 2010) (holding that a "witness is absolutely immune from civil liability based on any testimony the witness provides during a judicial proceeding 'even if the witness knew the statements were false and made them with malice'" (quoting *Briscoe v. LaHue*, 460 U.S. 325, 332 (1983))). Mr. Handy objects to this analysis on two grounds.

First, he insists his claims were not limited to defendants' preliminary-hearing testimony but incorporated their earlier conduct with respect to the investigation of the case and preparation of the probable-cause affidavit underlying the arrest warrant. He does not, however, offer any explanation for his unqualified representations to the contrary at his deposition. *See* R. at 404, dep. pp. 154-55 (stating Fourth Amendment claim was based solely on allegedly perjured preliminary hearing testimony), *id.* at 405, dep. p. 157 (stating allegedly fabricated evidence underlying Fourteenth Amendment claim was their preliminary hearing testimony), *id.*, dep. p. 159 (stating conspiracy claim was based on similarity of defendants' allegedly perjured testimony at preliminary hearing). Moreover, the argument advanced in his responses to summary judgment was likewise limited to the preliminary hearing testimony. *See* R. at 579-80, 590-91. The district court therefore did not err in addressing his claims accordingly.

Second, citing *Anthony v. Baker*, 955 F.2d 1395 (10th Cir. 1992), Mr. Handy contends that a law enforcement officer testifying at a preliminary hearing (or grand jury proceeding) is not entitled to absolute immunity if she serves as a complaining witness. *See id.* at 1401-02; *cf. id.* at 1402 (holding ordinary witness at preliminary

25

hearing is entitled to absolute immunity).  The distinction drawn in *Anthony* between officials who testify as ordinary witnesses cloaked with absolute immunity and those who testify as complaining witnesses exposed to § 1983 liability, was squarely rejected by the Supreme Court in *Rehberg v. Paulk*, 132 S. Ct. 1497, 1500, 1507-10 (2012).  In light of *Rehberg*, we must afford defendants Bryant and Montoya absolute immunity for their preliminary-hearing testimony.

### 4.  Claims Relating to Charge for Violation of Protective Order

Mr. Handy claimed Detective Bryant also violated his Fourth Amendment rights in connection with his arrest and confinement on a charge that he had sent letters to his ex-wife in contravention of a protective order when both were confined in Denver facilities.  The gravamen of his complaint was that the operative probable-cause affidavit prepared by Detective Bryant misrepresented, both by affirmative misstatement and pertinent factual omissions, that the offense occurred in Arapahoe County, Colorado.  The district court held, *inter alia*, that this misrepresentation was constitutionally immaterial because it did not affect the probable cause determination, which is the focus of the controlling Fourth Amendment analysis.  *See Puller*, 781 F.3d at 1197.  We agree the misrepresentation did not affect probable cause, as Mr. Handy's violation of the protective order did not depend on where he or his ex-wife was located when he mailed the prohibited written communications to her.

Mr. Handy insists that location was nevertheless constitutionally significant in another way.  He argues that Detective Bryant's misrepresentation led to the issuance

26

of a warrant beyond the territorial authority of the issuing court, invalidating the warrant needed to comply with the Fourth Amendment (absent some other basis for satisfying Fourth Amendment strictures, such as exigent circumstances or consent). This court has indeed held that a warrant issued by a court beyond its authority is "essentially void *ab initio*," so that the "constitutionality of the [action taken on the basis of the warrant] may by upheld [only] on some alternative basis." *United States v. Baker*, 894 F.2d 1144, 1147 (10th Cir. 1990) (suppressing evidence of search on Indian land because state court lacked authority to issue search warrant); *cf. United States v. Krueger*, ___ F.3d ___, 2015 WL 7783682, *11-13 (10th Cir. Nov. 10, 2015) (Gorsuch, J., concurring) (citing *Baker* and concluding that arrest warrant issued beyond magistrate judge's territorial authority "was no warrant at all for Fourth Amendment purposes," resulting in need for consent or exigent circumstances to support arrest). But Mr. Handy's claim falters at an earlier step in the analysis: the warrant issued by the court in Arapahoe County was not territorially invalid. "[A]n arrest warrant based on an affidavit establishing probable cause is valid throughout the state of Colorado and may direct any peace officer to arrest the individual named in the warrant." *People v. Schultz*, 611 P.2d 977, 978 (Colo. 1980); *see also People v. Hamilton*, 666 P.2d 152, 156 (Colo. 1983) (holding that "arrest warrants are not territorially limited and, therefore, may be executed anywhere in Colorado"). Thus, the misstatement regarding the location of the violation had no effect on the court's authority to issue the warrant and could not have given rise to a Fourth Amendment violation.

27

**D.  Denial of Post-Judgment Motion for Reconsideration**

Following the entry of judgment, Mr. Handy timely sought reconsideration under Rules 59(e) and 60(b).  The district court addressed the motion under the standards appropriate to each rule and denied relief.  We review its ruling as to both Rule 59(e) and 60(b) for abuse of discretion.  *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008).

In his motion, Mr. Handy revisited several procedural matters we have already concluded had been properly resolved, such as his efforts to reopen and challenge defendants' response to discovery, to strike his counsel's summary judgment responses and re-brief summary judgment himself,[14] and to submit a new affidavit in opposition to summary judgment.[15]  He also summarily re-argued the merits of his claims, the resolution of which we have also already upheld.  The district court concluded that Mr. Handy had not demonstrated grounds for post-judgment relief.  Mr. Handy seems to suggest that the district court failed to analyze his motion under

---

[14] In this regard, the district court independently considered whether the omissions of counsel noted by Mr. Handy might warrant relief under the "excusable neglect" provision in Rule 60(b)(1).  The district court held such relief was not warranted, because plaintiff had not shown that any of counsel's alleged omissions was excusable.  That ruling does not reflect an abuse of discretion.

[15] In conjunction with referring to the new affidavit, he also objected that the district court had ignored an earlier declaration attached to his complaint.  But the declaration had not been relied on to oppose summary judgment.  *See Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (holding district court has no duty to independently review the record for evidence that might oppose summary judgment).  And, having been available since the inception of the case, it did not qualify as *new* evidence that might warrant post-judgment relief.

Rule 59(e) as well as Rule 60(b). This objection is belied by the plain language of the district court's order, which expressly considered Rule 59(e) and rejected relief thereunder because Mr. Handy had not advanced any intervening change in law or newly available evidence, nor had he shown the existence of clear error in the prior disposition of the case. *See Monge v. RG Petro-Machinery (Grp.) Co. Ltd.*, 701 F.3d 598, 611 (10th Cir. 2012) (setting out grounds for reconsideration under Rule 59(e)). On appeal, Mr. Handy insists he had presented new evidence in conjunction with his reconsideration motion—the affidavit and pro se summary judgment responses he submitted at around the same time. But we have already upheld the district court's prior ruling prohibiting the filing of these materials. And in any event, as the district court noted, Mr. Handy never advanced a new-evidence argument as a ground for reconsideration under Rules 59(e) or 60(b).[16] We will not disturb the district court's decision on a basis never properly offered for its consideration. *See ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1178 (10th Cir. 2011).

---

[16] His only passing references to new evidence in his motion were in formulaic summaries of cognizable grounds for relief under Rules 59 and 60: "Alternatively, Plaintiff argues a need to correct error or prevent manifest injustice, the court has misapprehended the facts, a party's position, or the controlling law; or mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or any other reasons justifying relief from judgment." R. at 1303; *see also id.* at 1320. Such perfunctory references, lacking any argumentative development to afford the district court a meaningful opportunity to consider and rule on the matter, do not suffice to preserve an issue for appeal. *See Folks v. State Farm Mut. Auto. Ins. Co.*, 784 F.3d 730, 741 (10th Cir. 2015).

## V.  CONCLUSION

Mr. Handy has failed to demonstrate reversible error.  We therefore affirm the judgment of the district court.  Mr. Handy's motion for leave to proceed on appeal in forma pauperis is granted, but his motions for appointment of counsel on appeal are denied.

Entered for the Court


Jerome A. Holmes
Circuit Judge